JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
DELAWARE AVENUE, LLC

**(b)** County of Residence of First Listed Plaintiff: Philadelphia County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Robert L. Ebby, One Logan Square, 27th Floor
Philadelphia, PA  19103
(215) 496-7053

## DEFENDANTS
RECLEIM PA LLC and RECLEIM LLC

County of Residence of First Listed Defendant: Fulton County, GA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question  *(U.S. Government Not a Party)*
- [x] 4  Diversity  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☒ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 usc sec. 1332(a)

Brief description of cause:
Ejectment and breach of industrial lease; tortious interference

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**  650,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____
DOCKET NUMBER _____

DATE: 07/16/2020
SIGNATURE OF ATTORNEY OF RECORD: *(signature)*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____

Address of Defendant: _____

Place of Accident, Incident or Transaction: _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☐

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____  *Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A. *Federal Question Cases:*
☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

B. *Diversity Jurisdiction Cases:*
☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____  *Attorney-at-Law / Pro Se Plaintiff*  *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | |
|---|---|
| DELAWARE AVENUE, LLC : | |
| : | |
| v.  : | No.: |
| : | |
| RECLEIM PA LLC, and : | |
| RECLEIM LLC : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See §1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS**:

(a) Habeas Corpus - Cases brought under 28 U.S.C. §2241 through §2255.                             (    )

(b)h Social Security - Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                             (    )

(c) Arbitration - Cases required to be designated for arbitration under Local Civil Rule 53.2.                             (    )

(d) Asbestos - Cases involving claims for personal injury or property damage from exposure to asbestos.                             (    )

(e) Special Management - Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                             (    )

(f) Standard Management - Cases that do not fall into any one of the other tracks.                             ( X )

July 16, 2020       [signature]      DELAWARE AVENUE, LLC
*Date*     *Attorney-at-Law*     *Attorney for*

215-496-7053     215-568-0300     rebby@hangley.com
*Telephone*     *FAX Number*     *E-Mail Address*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| DELAWARE AVENUE, LLC<br>4233 Richmond Street<br>Philadelphia, PA 19137,<br><br>Plaintiff,<br><br>v.<br><br>RECLEIM PA LLC<br>34 Old Ivy Road, Suite 200<br>Atlanta, GA 30342<br><br>and<br><br>RECLEIM LLC<br>34 Old Ivy Road, Suite 200<br>Atlanta, GA 30342,<br><br>Defendants. | CIVIL ACTION<br><br>No. _____ |

## **COMPLAINT**

Plaintiff Delaware Avenue, LLC ("Landlord") brings this Complaint against defendants Recleim PA LLC ("Recleim PA") and its owner and parent, Recleim LLC ("Recleim Parent"), and in support avers the following:

## **INTRODUCTION**

1. This is an ejectment and damages action to remove a commercial holdover tenant that has failed to pay rent for more than seven months from Landlord's industrial complex at 4301 North Delaware Avenue, Philadelphia, PA and to recover the more than $650,000 in back rent owed as well as property damage that Recleim PA and Recleim Parent (collectively, "Recleim") have caused.

2. Pursuant to two commercial leases between Landlord and Recleim PA, Landlord leased Buildings A and B and surrounding areas (the "Premises") at its 4301 North Avenue industrial complex to Recleim PA. Recleim PA and/or Recleim Parent operate Recleim Parent's Philadelphia appliance recycling plant at the Premises.

3. After (a) Recleim PA had fallen behind on its rent payment in July, August, September, October, November, and December 2019; (b) Recleim had amassed a mountain of industrial waste at the Premises; and (c) Recleim PA had failed to pay any rent in January 2020, Landlord terminated the Leases and directed Recleim PA to vacate the Premises.

4. Although both Leases have been terminated and Recleim PA was required to vacate the Premises in January 2020, Recleim PA – for the past seven months – has continued to occupy the Premises as a holdover tenant and, together with Recleim Parent, operate Recleim Parent's recycling plant.

5. Recleim PA has not paid any rent since December 2019.

6. Recleim PA has also barred Landlord from entering the Premises to inspect or repair the structural damage Recleim has caused to the Premises, and Recleim PA has become delinquent on its payment obligations to the City of Philadelphia, including by failing to pay its water utility bills, forcing Landlord to pay the same to avoid the imposition of a lien on its property. Landlord also paid Recleim PA's 2020 use and occupancy taxes through March 2020 to avoid a lien. Recleim PA's use and occupancy taxes for April, May, June, and July remain unpaid.

7. Further, although Recleim PA's rent delinquencies clearly predate the COVID-19 pandemic, Recleim PA – three months after the Leases had been terminated – shamelessly

sought to use the COVID-19 pandemic to excuse its failure to pay rent since January 2020, all the while continuing to operate the plant at the Premises, but now rent-free.

8. Accordingly, Landlord brings this action to recover its property, have Recleim ejected from the Premises, and recover the more than $650,000 in back rent owed and structural damage repair costs.

**THE PARTIES, JURISDICTION, AND VENUE**

9. Landlord is a Pennsylvania limited liability company that maintains a business address located at 4233 Richmond Street, Philadelphia, PA 19137. For purposes of diversity jurisdiction, Landlord is deemed a citizen of New Jersey, as its sole member is an individual who resides in New Jersey.

10. Recleim Parent is a Delaware limited liability company that maintains a business address at 34 Old Ivy Road, Suite 200, Atlanta, GA 30342. Recleim Parent owns Recleim PA and operates and/or owns an appliance recycling plant at the Premises.

11. Recleim PA is a Delaware limited liability company that maintains a business address at Recleim Parent's office: the same 34 Old Ivy Road, Suite 200, Atlanta, GA 30342 address. Upon information and belief, Recleim PA is wholly owned by Recleim Parent.

12. Upon information and belief, no Recleim PA member or Recleim Parent member is a citizen of New Jersey; on the contrary, each Recleim PA member and Recleim Parent member is a citizen of a state other than New Jersey.

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the controversy is between commercial entities that are citizens of different states.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because (a) the property at issue in this action is located within this judicial district; (b) a substantial part of the

events, occurrences, and omissions that give rise to the causes of action in this action occurred in this judicial district; and (c) Recleim PA and Recleim Parent are subject to personal jurisdiction in this Commonwealth, which includes this judicial district.

15. This Court may exercise personal jurisdiction over Recleim PA because, among other things, Recleim PA leased property and operates a business within this Commonwealth and regularly conducts business here, specifically with respect to the Premises and Leases at issue. This Court may exercise personal jurisdiction over Recleim Parent because, among other things, Recleim Parent, according to its website, owns and operates an appliance recycling plant in this Commonwealth, specifically at the Premises, and regularly conducts business here. Further, as more fully stated below, Recleim Parent has tortiously interfered with the Leases and caused harm in this Commonwealth.

## BACKGROUND

16. Landlord owns the Premises, which are part of a larger industrial complex located at 4301 North Delaware Avenue, Philadelphia, PA, near the Betsy Ross Bridge. Specifically, the Premises consist of two buildings within this industrial complex – Buildings A and B – and certain surrounding area. Building A consists of approximately 52,000 sf; Building B consists of approximately 23,500 sf.

**A. Recleim PA Leases the Premises to Operate Recleim Parent's Philadelphia Appliance Recycling Plant**

17. Pursuant to an Assignment and Assumption of Lease dated August 16, 2017, Recleim PA, as the tenant, assumed an Industrial Lease dated November 2008, as amended. A copy of the Assignment and Assumption of Lease, together with the original lease and amendments thereto for Building A (collectively, the "Building A Lease") is attached as Exhibit A.

18. Pursuant to another Assignment and Assumption of Lease dated August 16, 2017, Recleim PA, as the tenant, assumed an Industrial Lease for Building B dated October 1, 2013, as amended. A copy of the Assignment and Assumption of Lease, together with the original lease and amendments thereto for Building B (collectively, the "Building B Lease") is attached as Exhibit B.

19. Pursuant to the Building A and Building B Leases, Landlord provided industrial space to Recleim PA, which Recleim uses to operate Recleim Parent's Philadelphia appliance recycling plant.

20. Pursuant to the Building A Lease, Recleim PA agreed to pay Landlord a monthly Base Rent in advance on the first day of each calendar month. (Building A Lease Art. 4, ¶¶ 4.01, 4.02.) Specifically, the Building A Lease provides in part as follows with respect to certain rent:

### ARTICLE IV - RENT

4.01 **Base Rent.** During the Lease Term, Tenant shall pay to Landlord as rental for the Premises the Base Rent described in Section 1.06 [sic] above.

4.02 **Payment.** Base Rent shall be payable in advance on the first day of each calendar month. All Rent, and all other amounts payable to Landlord by Tenant pursuant to the provisions of this Lease, shall be paid to Landlord, without notice, demand, abatement, deduction or offset, in lawful money of the United States at Landlord's address, as stated herein, or to such other person or at such other place as Landlord may designate from time to time by written notice given to Tenant.

4.03 **Late Charge; Interest.** Tenant acknowledges that the late payment of Base Rent or any other amounts payable by Tenant to Landlord hereunder (all of which shall constitute additional rental to the same extent as Base Rent) will cause Landlord to incur administrative costs and other damages, the exact amount of which would be impracticable or extremely difficult to ascertain. Landlord and Tenant agree that if Landlord does not receive any such payment on or before five (5) days after the date the payment is due, Tenant shall pay to Landlord, as additional rent, a late

>charge equal to ten percent (10%) of the overdue amount to cover such additional administrative costs.
>
>4.04   **Additional Rent.** For purposes of this Lease, all amounts payable by Tenant to Landlord, if any, pursuant to this Lease other than Base Rent, whether or not denominated as such, shall constitute "Additional Rent".  Any amounts due Landlord shall sometimes be referred to in this Lease as "Rent".

21. The Base Rent under the Building A Lease for January 2020 was $21,620.75.

22. Recleim PA further agreed that, in the event it became a holdover tenant, rent would increase to 150% of the rent that had been payable at the last month of the Lease. (*Id.* ¶ 20.03.) Specifically, Recleim PA agreed as follows with respect to any holdover tenancy:

>20.03   **Holdover Tenancy.** If Tenant holds possession of the Premises after the expiration or termination of the Lease Term, by lapse of time or otherwise, Tenant shall become a tenant at sufferance upon all of the terms contained herein, except as to Lease Term and Rent. During such holdover period, Tenant shall pay to Landlord a monthly rental equivalent to one hundred fifty percent (150%) of the Rent Payable by Tenant to Landlord with respect to the last month of the Lease Term. The monthly rent payable for such holdover period shall in no event be construed as a penalty or as liquidated damages for such retention of possession. Without limiting the foregoing, Tenant hereby agrees to indemnify, defend and hold harmless Landlord, its beneficiary, and their respective agents, contractors and employees, from and against any and all claims, liabilities, actions, losses, damages (including without limitation, direct, indirect, incidental and consequential) and expenses (including, without limitation, court costs and reasonable attorneys' fees) asserted against or sustained by any such party and arising from or by reason of such retention of possession, which obligations shall survive the expiration or termination of the Lease Term.

23. Recleim PA also agreed to pay (a) certain late fees and interest, as applicable, as well as its own utilities. (*See id.* ¶¶ 4.03; 4.04; 7.01.) Recleim PA also agreed to be responsible for and pay its use and occupancy taxes.

24. Recleim PA also agreed to pay Landlord's costs and attorneys' fees in any action to enforce the Lease or Landlord's remedies, where Landlord is the prevailing party. (*Id.* ¶ 25.14.) Specifically, Recleim PA agreed as follows with respect to attorneys' fees:

> 25.14 **Legal Expenses**. If either party hereto is made or becomes a party to any litigation commenced by or against the other party involving the enforcement of any of the rights and remedies of such party, or arising on account of the default of the other party in the performance of such party's obligations hereunder, then the prevailing party in any such litigation, or the party becoming involved in such Litigation because of a claim against such other party, as the case may be, shall receive from the other party all actual, documented costs and reasonable attorneys' fees incurred by such party at trial and on appeal in connection with such litigation.

25. Pursuant to the Building B Lease, Recleim PA agreed to pay Landlord a monthly Base Rent in advance on the first day of each calendar month. (Building B Lease Art. 4, ¶¶ 4.01, 4.02.) Specifically, the Building B Lease provides as follows:

### ARTICLE IV - RENT

> 4.01 **Base Rent.** During the Lease Term, Tenant shall pay to Landlord as rental for the Premises the Base Rent described in Section 1.06 above.
>
> 4.02 **Payment.** Base Rent shall be payable in advance on the first day of each calendar month. All Rent, and all other amounts payable to Landlord by Tenant pursuant to the provisions of this Lease, shall be paid to Landlord, without notice, demand, abatement, deduction or offset, in lawful money of the United States at Landlord's address, as stated herein, or to such other person or at such other place as Landlord may designate from time to time by written notice given to Tenant.
>
> 4.03 **Late Charge; Interest.** Tenant acknowledges that the late payment of Base Rent or any other amounts payable by Tenant to Landlord hereunder (all of which shall constitute additional rental to the same extent as Base Rent) will cause Landlord to incur administrative costs and other damages, the exact amount of which would be impracticable or extremely difficult to ascertain. Landlord and Tenant agree that if Landlord does not receive any such payment on or before five (5) days after the date the payment

>is due, Tenant shall pay to Landlord, as additional rent, a late charge equal to ten percent (10%) of the overdue amount to cover such additional administrative costs.
>
>4.04  **Additional Rent.** For purposes of this Lease, all amounts payable by Tenant to Landlord, if any, pursuant to this Lease other than Base Rent, whether or not denominated as such, shall constitute "Additional Rent". Any amounts due Landlord shall sometimes be referred to in this Lease as "Rent".

26. The Base Rent under the Building B Lease for January 2020 was $13,954.37.

27. Recleim PA further agreed that, in the event it became a holdover tenant, the Base Rent would be 150% of the Base Rent that had been payable at the last month of the Lease. (*Id.* ¶ 20.03.) Specifically, the Building B Lease provides as follows with respect to any holdover tenancy:

>20.03  **Holdover Tenancy.** If Tenant holds possession of the Premises after the expiration or termination of the Lease Term, by lapse of time or otherwise, Tenant shall become a tenant at sufferance upon all of the terms contained herein, except as to Lease Term and Rent. During such holdover period, Tenant shall pay to Landlord a monthly rental equivalent to one hundred fifty percent (150%) of the Rent Payable by Tenant to Landlord with respect to the last month of the Lease Term. The monthly rent payable for such holdover period shall in no event be construed as a penalty or as liquidated damages for such retention of possession. Without limiting the foregoing, Tenant hereby agrees to indemnify, defend and hold harmless Landlord, its beneficiary, and their respective agents, contractors and employees, from and against any and all claims, liabilities, actions, losses, damages (including without limitation, direct, indirect, incidental and consequential) and expenses (including, without limitation, court costs and reasonable attorneys' fees) asserted against or sustained by any such party and arising from or by reason of such retention of possession, which obligations shall survive the expiration or termination of the Lease Term.

28. Recleim also agreed to pay certain late fees and interest, as applicable, as well as its own utilities. (*See id.* ¶¶ 4.03; 4.04; 7.01.) Recleim PA also agreed to be responsible for and pay its use and occupancy taxes.

29. Recleim also agreed to pay Landlord's costs and attorneys' fees in any action to enforce the Lease or Landlord's remedies, where Landlord is the prevailing party. (*Id.* ¶ 23.14.) Specifically, Recleim PA agreed as follows:

> 20.03  **Holdover Tenancy.** If Tenant holds possession of the Premises after the expiration or termination of the Lease Term, by lapse of time or otherwise, Tenant shall become a tenant at sufferance upon all of the terms contained herein, except as to Lease Term and Rent. During such holdover period, Tenant shall pay to Landlord a monthly rental equivalent to one hundred fifty percent (150%) of the Rent Payable by Tenant to Landlord with respect to the last month of the Lease Term. The monthly rent payable for such holdover period shall in no event be construed as a penalty or as liquidated damages for such retention of possession. Without limiting the foregoing, Tenant hereby agrees to indemnify, defend and hold harmless Landlord, its beneficiary, and their respective agents, contractors and employees, from and against any and all claims, liabilities, actions, losses, damages (including without limitation, direct, indirect, incidental and consequential) and expenses (including, without limitation, court costs and reasonable attorneys' fees) asserted against or sustained by any such party and arising from or by reason of such retention of possession, which obligations shall survive the expiration or termination of the Lease Term.

### B. Recleim PA Defaults under Both Leases

30. Beginning in July 2019, Recleim PA began to default on its payment obligations under both Leases. For example, in each of the months of July, August, September, October, November, and December in 2019, Recleim PA failed to pay rent when due.

31. Recleim PA then belatedly paid each month's rent, but for July, August, November, and December only after first requiring Landlord to pursue Reclaim PA for the missing rent.

32. By January 7, 2020, Recleim PA had once again failed to pay its rent.

33. Recleim PA's failure to pay the January rent was not an isolated occurrence. As noted above, Reclaim PA had also failed to pay rent when due in July, August, September,

October, November, and December of 2019, and Recleim PA only belatedly paid rent for July, August, November, and December after forcing Landlord to chase it for the overdue rent.

34. Upon information and belief, Recleim Parent directed Recleim PA not to pay the January rent or encouraged it or prevented it from doing so.

35. In addition to Recleim PA falling behind on rent, Recleim also amassed a significant amount of appliance waste at the Premises, which waste threatened to pose an environmental hazard if not properly stored and removed.

36. Recleim PA had also become delinquent on its water utility bills, which ultimately forced Landlord to pay the delinquent bills to avoid having a lien placed against Landlord's property. Landlord also paid Recleim PA's 2020 use and occupancy taxes for January, February, and March to avoid such a lien. Recleim PA's use and occupancy taxes for April, May, June, and July remain unpaid.

37. Recleim PA's failure to pay January rent – particularly after failing to timely pay rent in the preceding months of July, August, September, October, November, and December – constituted an Event of Default and material breach under the Building A and B Leases.

38. Among other things, the Building A Lease and Building B Lease provide as follows:

> 14.01 **Events of Default by Tenant.** The occurrence of any of the following shall constitute a material default and breach of this Lease by Tenant and shall be deemed an "Event of Default":
>
> (A) The failure by Tenant to pay Base Rent or make any other payment required to be made by Tenant hereunder as and when due, and such failure continues for ten (10) days after Tenant's receipt of written demand therefor; provided however, that if Tenant shall default in the payment of Rent two (2) or more times in any twelve (12) month period, then notwithstanding that all such prior defaults have been cured by Tenant, any further default in the payment of Rent or other sum of money when due hereunder shall be deemed an event of default and shall entitle

>Landlord to exercise all of its rights and remedies under this Lease, including the right of termination, without giving to Tenant any period within which to cure such default.

**C.    Recleim's Defaults Cause Landlord to Exercise Its Right to Terminate the Leases**

39.    By January 2020, it became evident that Recleim PA's rent payment defaults were not mere oversights or isolated incidents. On the contrary, it was clear that Recleim PA had significant financial trouble and had become a perennial problem tenant. Having already been forced to chase Recleim PA for rent in July, August, November, and December; and having also received September and October rent late; and concerned that Recleim PA would also default on its obligation to address the growing mountain of appliance waste that began to overtake the Premises, Landlord exercised its rights under the Building A Lease and Building B Lease to terminate each Lease.

40.    Specifically, by letter dated January 7, 2020, pursuant to the terms of the Building B Lease, Landlord terminated the Building B Lease, effective January 13, 2020, and directed Reclaim PA to vacate the Premises by then. (Letter from R. Ebby to Recleim PA dated January 7, 2020, a copy of which is attached as Exhibit C.)

41.    Similarly, by letter dated January 8, 2020, pursuant to the terms of the Building A Lease, Landlord terminated the Building A Lease, effective January 13, 2020, and directed Recleim PA to vacate the Premises by then. (Letter from R. Ebby to Recleim PA dated January 8, 2020, a copy of which is attached as Exhibit D.)

**D.    Recleim PA Refuses to Vacate the Premises, Becoming a Holdover Tenant Operating Recleim Parent's Recycling Plant but Without Paying any Rent**

42.    Notwithstanding that it was required to vacate the Premises, Recleim PA has remained at the Premises, operating – together with Recleim Parent – Recleim Parent's recycling plant as business as usual but without paying any rent for the past seven months.

43.  Further, after Landlord discovered structural damage in both Buildings A and B and retained an engineering and construction firm to evaluate the damage and make repairs, Recleim PA denied Landlord further access to Landlord's own buildings, preventing Landlord from making the repairs or inspecting the partial or temporary repairs that Recleim PA apparently hastily made.

44.  Recleim PA then had the audacity to seek to use the COVID-19 pandemic as an excuse for its self-declared 7-month (and counting) rent holiday, asserting in April 2020 that it was instituting a "rent moratorium" based on an alleged "force majeure."

45.  Recleim PA has no basis for its unilaterally-imposed "rent moratorium." Recleim PA defaulted under the Leases well prior to the COVID-19 pandemic. The Leases were terminated well prior to the COVID-19 pandemic. Recleim PA (wrongfully) remains in possession of the Premises. Recleim continues to operate Recleim's Philadelphia recycling plant at the Premises. In any event, Recleim PA expressly agreed that, even in the event of an actual force majeure, such force majeure could not and would not permit Recleim PA to withhold rent or declare any "rent moratorium." (Building A Lease ¶ 25.04; Building B Lease ¶ 23.04.). Specifically, Recleim PA – in both Leases – agreed as follows with respect to any force majeure:

> 25.04  **Force Majeure**. Notwithstanding anything in this Lease to the contrary, neither party shall be deemed in default with respect to the performance of any of the terms, covenants, and conditions of this Lease (other than the payment of rent or other monetary obligations hereunder, none of which shall be subject to matters of force majeure) to be performed by it if any failure of its performance shall be due to any strike, lockout, civil commotion, war, warlike operation, invasion, rebellion, hostilities, military or usurped power, sabotage, governmental regulations or controls, inability to obtain any material or service, Act of God, weather, or any other cause whatsoever (including failure of Landlord or Tenant to supply necessary data or instructions) beyond the reasonable control of such party, and the time for performance by such party shall be extended by the period of delay resulting from

>or due to any of said causes; provided, however, in the event the
>period of delay resulting from or due to any of said causes exceeds
>one hundred eighty (180) days, either party may terminate this
>Lease upon written notice to the other. Additionally, in no event
>shall this Section apply to Landlord's obligations under Article XI
>or Article XII above.

46. As noted above, despite demand, Recleim PA has also failed to pay its water utility bills and use and occupancy taxes, forcing Landlord to pay at least certain of these amounts to avoid having a lien placed on its property as a result of Recleim PA's recurrent delinquencies.

47. Recleim PA ignored Landlord's other repeated demands, which forced Landlord to incur legal fees in seeking to enforce its rights under the Leases and protect its property.

## Count I
## Declaratory Judgment (against Recleim PA)

48. Landlord incorporates the allegations of the preceding paragraphs as if set forth fully herein.

49. The Building A Lease and Building B Lease are valid contracts that Landlord properly terminated after Recleim PA defaulted under each Lease.

50. Recleim PA, however, has refused to acknowledge this or to vacate the Premises, apparently contending that Landlord was not permitted to terminate the Leases, and Recleim PA – now as a holdover tenant – has unilaterally declared a "rent moratorium" based on an alleged "force majeure."

51. Recleim PA's refusal to acknowledge that the Leases have been terminated and its insistence that it may remain at the Premises – without paying any rent – is contrary to the terms of the Leases and Landlord's termination of the Leases, all of which has caused and will continue to cause Landlord damages.

52. There is an actual justiciable case and controversy between Landlord and Recleim PA regarding the termination of the Leases.

53. Landlord is entitled to a declaration that each Lease has been properly terminated and that Recleim PA, by remaining at the Premises after January 13, 2020, is a holdover tenant.

**WHEREFORE**, Landlord requests that judgment be entered in its favor and against Recleim PA, together with the following relief:

    A. A declaration that each Lease has been properly terminated;

    B. A declaration that Recleim PA is a holdover tenant;

    C. A declaration that Recleim PA has no right to remain at the Premises;

    D. An award to Landlord for its costs and legal fees incurred in this action against Recleim PA and in enforcing its rights under the Leases; and

    E. Such other and further relief as this Court deems just and proper.

## Count II
### Ejectment and Judgment for Possession (against Recleim PA and Recleim Parent)

54. Landlord incorporates the allegations of the preceding paragraphs as if set forth fully herein.

55. Landlord owns the Premises.

56. Recleim PA became a commercial tenant at the Premises through the Building A and Building B Leases.

57. By letter dated January 7, 2020, Landlord terminated the Building B Lease.

58. By letter dated January 8, 2020, Landlord terminated the Building A Lease.

59. In connection with terminating each Lease, Landlord demanded that Recleim PA vacate the Premises by January 13, 2020.

60. Recleim PA has ignored Landlord's demands, and Recleim PA and/or Recleim Parent continue to occupy the Premises, without paying any rent and without any right to occupancy.

**WHEREFORE**, Landlord requests that judgment be entered in its favor and against Recleim PA and Recleim Parent, together with the following relief:

> A. Judgment in ejectment against Recleim PA and for possession of the Premises against Recleim PA and Recleim Parent in favor of Landlord;
>
> B. An award to Landlord against Recleim PA for Landlord's costs and legal fees incurred in this action; and
>
> C. Such other and further relief as this Court deems just and proper.

### Count III
### Breach of Contract (against Recleim PA)

61. Landlord incorporates the allegations of the preceding paragraphs as if set forth fully herein.

62. The Building A and B Leases are enforceable contracts.

63. Landlord performed its obligations under the Leases.

64. Pursuant to the Building A and Building B Leases, Recleim PA was required to pay rent.

65. Further, after the Leases were terminated and Recleim PA became a holdover tenant, Recleim PA became obligated to pay rent at the holdover tenant rate.

66. Despite this rent obligation and its occupation of the Premises, Recleim PA has paid no rent.

67. Pursuant to the Leases, Recleim PA is also obligated to pay late fees and interest on delinquent rent.

68. Recleim PA also caused structural damage at the Premises and has failed to remove a mound of industrial waste that it has amassed on the Premises.

69. In addition, Recleim PA also defaulted on its obligations to the City of Philadelphia, forcing Landlord to pay Recleim PA's water utility bills and its 2020 use and occupancy taxes for January, February, and March, to avoid the imposition of a lien on Landlord's property.

70. As a direct result of Recleim PA's conduct, Landlord has suffered damages.

71. Recleim PA's conduct has also forced Landlord to incur legal fees in enforcing its rights under the Lease and bringing this action, which fees Landlord is entitled to recover under the Leases.

WHEREFORE, Landlord respectfully requests that judgment be entered in its favor, together with the following relief:

    A.    Compensatory damages, including holdover rent, late charges, interest, and repair and waste removal costs;

    B.    An award to Landlord for its legal fees and costs incurred in this action and in enforcing its rights under the Leases; and

    C.    Such other and further relief as this Court deems just and proper.

### Count IV
### Tortious Interference with Contracts (against Recleim Parent)

72. Landlord incorporates the allegations of the preceding paragraphs as if set forth fully herein.

73. The Building A and B Leases are enforceable contracts to which Recleim Parent is not a party.

74. Recleim Parent is aware of each Lease.

75. As described above, Recleim Parent has assisted, encouraged, and facilitated Recleim PA's material breaches of the Leases.

76. Recleim Parent has engaged in such conduct intentionally and with malice and without privilege or justification.

77. As a direct result of Recleim Parent's conduct, Landlord has suffered damages.

WHEREFORE, Landlord respectfully requests that judgment be entered in its favor, together with the following relief:

    A. An award of compensatory damages;

    B. An award of punitive damages; and

    C. Such other and further relief as this Court deems just and proper.

Date:  July 16, 2020              **HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**

Robert L. Ebby
One Logan Square, 27th Floor
Philadelphian, PA  19103
rebby@hangley.com
(215) 568-6200

*Attorneys for Plaintiff Delaware Avenue, LLC*